UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>THOMAS M. SEVERNS,<br>    Defendant. | CR. No. 15-119-M-PAS |

### ORDER

Defendant Thomas M. Severns filed a Motion to Suppress (ECF No. 18) all tangible evidence seized by the Rhode Island State Police as a result of a traffic stop, frisk, and vehicle search. After full briefing, evidentiary hearing, and legal arguments, the Court DENIES Mr. Severns' motion.

Mr. Severns was driving 82 miles per hour in his girlfriend's car when two Rhode Island State Police troopers pulled him over on September 26, 2015 at approximately 2 a.m.[1] There were two male passengers in the vehicle. After running Mr. Severns' name through the NCIC database, which revealed a nineteen page long criminal history of arrests for crimes involving narcotics and violence, the troopers asked Mr. Severns to exit the vehicle. The troopers observed that Mr. Severns was wearing a t-shirt bearing the logo of the "Outlaw Motorcycle Gang," known to police to have a history of violent behavior. They also noted that his hands were shaking

---

[1] During the evidentiary hearing, both Rhode Island State Police troopers involved in the traffic stop testified. The Court found their testimony to be credible.

and he appeared to be nervous as he turned over his drivers' license. When asked about the "Outlaw Motorcycle Gang" affiliation, Mr. Severns indicated that he was a full patch member, that the two men were prospects, and that they were driving to Rhode Island to attend a party. In light of these observations, the troopers patted Mr. Severns down and found a large knife in a sheath attached to his belt. Determining that the length of the knife exceeded state statutory limits, the troopers arrested Mr. Severns, placed him in cuffs, and put him in the rear of the police cruiser. When asked about other weapons in the car, Mr. Severns evaded the question, instead insisting that he had not been drinking. Police searched the vehicle and found a loaded, semi-automatic handgun in the glove box. All three men were arrested and processed.

Because of a previous felony, Mr. Severns was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922 (g)(1) and 924 (a)(2). He moves to suppress the gun on several grounds, arguing that his arrest was illegal because the knife he was carrying was not concealed so therefore did not violate Rhode Island law, and that the frisk of his person and the inventory search of the car violated the Fourth Amendment of the United States Constitution.

First, the Court finds that the government has met its burden of establishing that the initial stop of Mr. Severns' vehicle was justified. It is uncontested that Mr. Severns was traveling 82 miles per hour in a 65 mile per hour section of Route 95 north in Rhode Island. *United States v. Whren*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have

probable cause to believe that a traffic violation has occurred."). Second, the troopers were allowed to remove Mr. Severns from his vehicle. When the police legally stop a vehicle, they "may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searched and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6 (1977).

Mr. Severns' final challenge to the legality of the vehicle search requires some discussion. The First Circuit Court of Appeals held that if an officer "has some articulable, reasonable suspicion that the persons stopped may be dangerous, he can pat them down and search the car's interior—including closed compartments—for weapons that they could quickly lay their hands on." *U.S. v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011).

Based on the totality of the record before it, the Court finds that the troopers reasonably suspected that the situation was dangerous and that the men might be carrying weapons in the car. They had reasonably grounded their suspicion on a host of facts taken together, including: 1) the fact that Mr. Severns was driving well over the speed limit; 2) he was a member of the Outlaw Motorcycle Gang driving prospective members to a party in Rhode Island and that the group is known to have a violent history; 3) Mr. Severns' hands were shaking and he appeared nervous; 4) he failed to produce his registration and only gave the officers his license when both were requested; 5) an NCIC check revealed Mr. Severns' 19-page criminal history, which included arrests for drugs, burglary, assault, making terrorist threats, and carrying a concealed weapon; 6) Mr. Severns repeatedly insisted that he had not been drinking

even though the troopers never asked whether he had been; 7) there were three unrelated men in a car, none of whom was the owner of the car; 8) the two troopers were alone on the scene at 2 a.m. in a quiet section of Route 95; and 9) when Mr. Severns was frisked after exiting his car, the police found a four-inch knife in a sheath on his belt. *Id.* at 823. Based on the totality of these factors, the officers reasonably believed that the situation was dangerous and the persons stopped may be dangerous, justifying the search of Mr. Severns' car including the glove box where the trooper found the gun.

This analysis of the facts and law appears sufficient to deny Mr. Severns' motion and not suppress any evidence. However, Mr. Severns raises another issue that the Court will now briefly address.

After being asked to exit the vehicle, the trooper's pat down of Mr. Severns revealed that he was wearing a sheath containing a four-inch long knife, which the troopers determined was in violation of R.I. Gen. Laws § 11-47-42(a)(3). He asks the Court to invalidate his arrest for carrying the knife in violation of the statute, which prohibits any person from wearing or carrying concealed upon his person a knife with a blade longer than three inches. The parties disagree about the interpretation of the statute and whether the knife was concealed or not. With regard to the statute, Mr. Severns argues that it only prohibits carrying such a weapon if it is concealed and his knife was visible because he wore it on his belt. The Government argues that the statute bars both the wearing and the concealed carrying of such a large knife.

4

The Rhode Island Supreme Court does not appear to have resolved this statutory section's interpretation,[2] but this Court declines to weigh in because whether the knife had to be concealed is irrelevant to this Court's decision here. The United State Supreme Court in *Heien v. North Carolina* held that even if the police mistakenly determined that certain conduct violated a statute, as long as the officers' view of the statute was not unreasonable, the seizure was not unlawful under the Fourth Amendment. 135 S.Ct 530, 536-40 (2014). The Court finds that the search and arrest was valid because, even if the troopers were mistaken about what kind of conduct the statute covered, their interpretation of the statute was not unreasonable, especially in light of the dearth of case law discussing the specific interpretation of the statute at issue here. Furthermore, any mistake resulting from that interpretation was also reasonable under the circumstances.

The Rhode Island State Police troopers acted properly when they stopped the car that Mr. Severns was driving in excess of the speed limit, ordered him out of the car, patted him down, and searched the car after the pat down revealed a large knife that the troopers knew or reasonably believed he carried in violation of state law. His arrest was lawful and the search and seizure did not violate the Fourth Amendment. Mr. Severns' Motion to Suppress (ECF No. 18) is DENIED.

---

[2] Mr. Severns cites the case of *State v. Johnson*, 414 A.2d 477, 480 (R.I. 1980) for the proposition that the statute only prohibits carrying a concealed knife. This Court does not read the Rhode Island Supreme Court in *Johnson* to have definitively made such a determination.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge
June 9, 2016