UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Case No. 15-119-M |
| THOMAS M. SEVERNS, | |
| Defendant. | |

## UNITED STATES' TRIAL MEMORANDUM

### I.    INTRODUCTION

The indictment charges the defendant with a single count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   A hearing was held on the defendant's motion to suppress on June 3, 2016, and that motion was denied.   See U.S. v. Severns, Cr. 15-119-M, Dkt. #27.

### II.    FACTS

The United States expects the evidence in this case to show the following:

On September 26, 2015, at approximately 1:50 a.m., two Rhode Island State Police troopers were in a cruiser on Route 95 in West Greenwich, Rhode Island, when they observed a red Acura vehicle traveling past them at 82 m.p.h.   The troopers pulled the vehicle over.   The car had Pennsylvania plates and was registered to the driver's girlfriend and (on information and belief) now wife.   In addition to the driver, there were two male passengers.   The front seat passenger was identified as Andrew Forte of New Jersey, and the rear seat passenger was Erik Niemiec of Philadelphia.   The driver of the Acura was defendant Thomas Severns.   When a trooper asked Mr. Severns where he was headed, Severns replied that he "was going to Rhode Island for a party."

Severns appeared to be nervous and his hand was shaking when he provided his driver's license to the trooper.   The passengers remained silent when questions were asked about where they were going.   All three of the occupants were smoking.   One of the troopers then checked NCIC and learned that Severns had an extensive criminal history involving (mostly arrests) for crimes of violence, firearm offenses and narcotics dating back to 1993.   The defendant's NCIC is nineteen pages long and dates back to April of 1993.   It includes arrests for simple and aggravated assault, endangering the welfare of a child, terroristic threats, burglary, carrying a firearm, and robbery.   The defendant has two felony convictions: a) a November 20, 2008 conviction in Pennsylvania for a felony drug offense where he received a sentence of 11 months and 15 days to 23 months of imprisonment in Commonwealth of Pennsylvania Dkt. CP-51-CR-00808251-2004 ("Felony #1"); and b) a November 7, 2008 felony drug offense where he received a sentence of two years probation with conditions in the Commonwealth of Pennsylvania Dkt. CP-51-CR-3287-2008 ("Felony # 2") .

After learning this, troopers requested that Severns exit the vehicle to separate him from his fellow travelers and to further their roadside inquiry.   Severns was wearing a t-shirt bearing the logo "Outlaws Motorcycle Gang."   He told troopers that he was a "full patch member" of the gang and that the two passengers were "prospects."

Under the totality of the then existing circumstances, including the NCIC report on Severns indicating a history of violence, Severns' nervous behavior, the three occupants' declared association with an outlaw motorcycle gang which the trooper

2

knew had a reputation for violence, the fact that their stated destination was an Outlaw event and a "full patch" member was escorting two "prospects," Severns was then patted down for weapons and troopers found a large knife in a sheath attached to Severns' waist.   The knife exceeded state limits and at that point the troopers had probable cause to arrest the defendant.

Troopers then asked Severns whether there were any additional weapons in the vehicle.   Severns would not answer the question directly, only stating repeatedly that he had not been drinking.   Troopers then handcuffed him and placed him in the back of a cruiser.   Troopers then began an inventory search of the vehicle.

A trooper then used the ignition key to open the glove box, and from inside the glove box police seized a loaded black Taurus semi-automatic handgun, bearing serial number TRJ70543.   All three individuals were then placed into custody and transported back to the Hope Valley barracks.   The vehicle was towed to the Hope Valley barracks where the inventory search was completed.   No further evidence was seized and none of the three defendants gave a statement.   All three were arrested and held overnight for presentment in state court in the morning.

III.    **POTENTIAL EVIDENTIARY ISSUES**

The government submits that there may be several evidentiary issues at trial which it seeks to outline below.   These issues include permissible impeachment, potential 404(b) evidence, and the marital privilege.

A.     <u>Impeachment</u>

If the defendant testifies, the government intends to impeach him using felonies #1 and #2.   If he or any other witness testifies contrary to previous statements or testimony, the government may seek to impeach the witness with prior inconsistent statements.   An overview of the applicable evidentiary rules and case law follows.

i.     <u>Impeachment Generally</u>

The credibility of a witness may be challenged by any party.   <u>See</u> Fed. R. Evid. 607.   To this end, the Court is afforded broad discretion.   <u>See</u> <u>U.S. v. Nogueira</u>, 585 F. 2d 23, 25 (1st Cir. 1978) <u>citing</u> Fed. R. Evid. 403, 608(b), 609(d).   Among the tools available to impeach a witness are the use of prior convictions, <u>see</u> Fed. R. Evid. 609, and the use of prior inconsistent statements, <u>see</u> Fed. R. Evid. 801(d)(1).

ii.     <u>Prior Inconsistent Statements</u>

Rule 801 (d)(1)(A) allows for the impeachment of a witness by using a witness' prior inconsistent statements.   Such statements are admissible because, "... trial testimony is less believable if [a witness] [] has made inconsistent statements about the matter on earlier occasions." <u>United States v. Hudson</u>, 970 F. 2d 948, 956 (1st Cir. 1992).[1]

---

[1]   Rule 801 (d)(1) provides: A statement is not hearsay if - (1) **Prior statement by witness.**   The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person.

In this case, the government may impeach a witness at trial should any of them testify inconsistent with their previous testimony.

### iii.    Prior Convictions

If the defendant testifies the government also intends to impeach him concerning certain prior convictions pursuant to Rule 609 of the Federal Rules of Evidence.[2]   It is axiomatic that "...defendants who choose to become witnesses on their own behalf become subject to impeachment by evidence of prior crimes."   United States v. Tracy, 3 F. 3d 187, 192 (1st Cir. 1994); United States v. Joost, 133 F. 3d 125 (1st Cir. 1998); see also United States v. Alexander, 48 F.3d 1477, 1488-89 (9th Cir.), cert. denied, 516 U.S. 878 (1995)(prior convictions for robbery and possessing crack cocaine for sale were admissible impeachment evidence); United States v. Cordoba, 104 F. 3d 225, 229 (9th Cir.

---

[2] Rule 609 provides in pertinent part:

(a) General rule. For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

***

1997) ("[p]rior convictions for drug offenses are probative of veracity, which was at issue"); United States v. Browne, 829 F. 2d 760, 763-64 (9th Cir. 1987), cert. denied, 485 U.S. 991 (1988) (upholding the admission of a prior bank robbery conviction in a prosecution for bank robbery).    Even if the defendant stipulates to a prior felony for the purposes of the prior conviction status element in the government's case-in-chief, if the defendant testifies "...the nature of the conviction [is] [] relevant for the independent purpose of impeaching the credibility of the testifying defendant."    United States v. Joost, 133 F. 3d at 129.

Generally, unlike evidence admitted pursuant to Fed. R. Evid. 404 (b), the details of the prior convictions are not fair game in front of a jury when convictions are used for impeachment under Rule 609.    U.S. v. White, 222 F. 3d 363, 370 (7th Cir. 2000).    The name of the crime charged, the date, and disposition will provide the usual boundary. Id.    If an attempt is made to explain away the prior conviction; however, a defendant opens the door to impeachment on the details.    Id. ; United States v. Smith, 453 F. 3d 707 (7th Cir. 2006) (same).    Likewise, when evidence of prior convictions are used "...where a defendant introduces, and makes material, specific conduct in his direct testimony, proving the falsity of such testimony is a fair target for the prosecution...".    United States v. Norton, 26 F. 3d 240, 244 (1st Cir. 1994) citing Fed. R. Evid. 402 and 403.

The Court, of course, should balance the impeachment value of the defendant's prior convictions with any prejudicial effect, save for those involving dishonesty or false

statements.[3]   The rule directs that when the witness is the defendant, "...evidence of a prior conviction shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."   United States v. Tse, 375 F. 3d 148, 160 (1st Cir. 2004).   In making its decision, the Court should consider, among other factors:   "(i) the impeachment value of the particular convictions; (ii) their immediacy or remoteness...; (iii) the degree of potential prejudice that they portend; (iv) the importance of the defendant's testimony; and (v) the salience of the credibility issue in the circumstances of a particular case."   Id. at 64.   Where, as here, the case is one of credibility, whether to believe the defendant or the police officers, "...[t]he salience of the credibility issue weighs in favor of admitting the prior convictions."   Id.

If the defendant testifies the government believes it should be able to impeach him with his prior felony convictions.

C.    404(b) Evidence

The government does not intend to offer any 404(b) evidence in its case-in-chief. The government is reserving its right to offer 404(b) evidence in rebuttal.   The government would seek to offer evidence of the defendant's prior arrests, particularly

---

[3]   Under Rule 609 (a)(2), evidence of a prior conviction for a crime involving dishonesty or false statement is admissible regardless if it is a felony or misdemeanor, and regardless of its prejudicial impact on the defendant.   Crimes involving dishonesty or false statement are automatically admissible for impeachment purposes.   No balancing of probative value and prejudicial effect is required.   So long as the conviction is not too old, the court has no discretion to exclude it.   See United States v. Tracy, 36 F. 3d 187, 192 (1st Cir. 1994).

his arrest for possession of a firearm in an automobile and his prior felony convictions.

Rule 404(b) of the Federal Rules of Evidence states:

> Other crimes, wrongs, or acts.    Evidence of other crimes,
>
> wrongs, or acts is not admissible to prove the character of a
>
> person in order to show action in conformity therewith.    It
>
> may, however, be admissible for other purposes, such as
>
> proof of motive, opportunity, intent, preparation, plan,
>
> knowledge, identity, or absence of mistake or accident.

The listing in Rule 404(b) is not exhaustive.    United States v. Fields, 871 F.2d 188, 196 (1st Cir. 1989).    The rule is one of inclusion.    United States v. Zeuli, 725 F.2d 813, 816 (1st Cir. 1984).    It allows admission of other relevant crimes, wrongs, or acts unless they are introduced solely to prove a defendant's criminal disposition.    United States v. Rubio-Estrada, 857 F.2d 845, 847 (1st Cir. 1988); United States v. Naranjo, 710 F.2d 1465, 1467 (10th Cir. 1983).

The trial judge should undertake a two-step analysis for determining whether prior crimes evidence is admissible under Rule 404(b).

> First, the trial court must determine that the
> evidence has some 'special' relevance; that is,
> whether the evidence is offered to establish
> some material issue such as intent or
> knowledge or is offered solely, and
> impermissibly, to establish the defendant's
> propensity for crime.    Second, the trial court
> must balance the special probative value of the
> evidence against the danger of unfair prejudice

8

> to the defendant, using the considerations
> underlying Rule 403.

United States v. Gonzalez-Sanchez, 825 F.2d 572, 579 (1st Cir.), cert. denied, 108 S.Ct. 510 (1987).

The balancing test is committed to the sound discretion of the trial judge.   United States v. Garcia, 983 F.2d 1160, 1172 (1st Cir. 1993); United States v. Flores-Perez, 849 F.2d 1, 4 (1st Cir. 1988); United States v. Gonzalez-Sanchez, 825 F.2d at 580.   To exclude such evidence, the prejudice must substantially overbalance any probative value--a significant tipping of the scales against the evidentiary worth of the other crimes evidence.   United States v. Devin, 918 F.2d 280, 286 (1st Cir. 1990).

The probative value of other acts evidence must be considered in light of the remoteness in time of the other acts or crimes and the degree of semblance to the crime charged.   Rule 404(b) is not constrained by the 10-year limitation of Fed.R.Evid. 609(b). However, if the time period is too remote, the probative value is weakened. Particularly in cases relative to intent, when considering the number of years that separate the offenses, the court should apply a reasonableness standard that looks to the facts and circumstances of each case.   United States v. Fields, 871 F.2d at 198.

Evidence of other crimes and acts that are relevant to an issue other than character of the defendant should be excluded only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior and that risk is disproportionate to the probative value of the evidence.   United States v. Zueli, 725 F.2d at 817; United States v. Fields, 871 F.2d at 198.

Only unfair prejudice is to be avoided.   United States v. Rodriguez-Estrada, 857 F.2d 845 (1st Cir. 1989); United States v. Gonzalez-Sanchez, 825 F.2d at 581.

Even where the defense is a general denial of the crime charged, other acts evidence may be admissible.   Such evidence is not limited solely to those cases, like here, where knowledge is specifically contested.   United States v. Oppon, 863 F.2d 141 (1st Cir. 1988).   In this case, the proffered evidence has substantial probative value. The defendant testified at his suppression hearing that he had no knowledge of the weapon in the locked glove box of the car he was driving.   Thus the defendant's knowledge in this case is paramount and an element of the offense.   The defendant's prior firearm arrest goes straight to the heart of the matter and if he testifies as he did at the suppression hearing, the underlying facts of his prior arrests and convictions should be admitted under Fed. R. Evid. 404(b).

D. Marital Privilege

The government may seek to call Ms. Heather Pacheco, who is the defendant's now wife, but who was not married to the defendant at the time she made certain statements relevant to this case.   The statements were made to investigators working on the investigation.   The common law recognizes two related but distinct marital privileges: (1) the spousal testimony privilege, which allows one spouse to refuse to testify adversely against the other in criminal or related proceedings; and (2) the marital communications privilege, which permits a defendant to refuse to testify, and allows a defendant to bar his spouse or former spouse from testifying, as to any confidential

10

communications made during their marriage.

In federal criminal cases, claims of privilege are governed by the federal common law as interpreted by the courts in light of their reason and experience. United States v. Breton, 740 F.3d 1, 9 (1st Cir. 2014)(citing United States v. Rakes, 136 F.3d 1, 3 (1st Cir.1998) (citing Fed.R.Evid. 501)). "The common law recognizes two related but distinct marital privileges: (1) the spousal testimony privilege and (2) the marital communications privilege." Breton, 740 F.3d at 10; see United States v. Yerardi, 192 F.3d 14, 17–18 (1st Cir.1999); United States v. Bey, 188 F.3d 1, 4 (1st Cir.1999); Rakes, 136 F.3d at 3. Like all privileges, the marital privileges hamper the truth-seeking process and must be interpreted narrowly. Breton, 740 F.3d at 11 (citing Trammel v. United States, 445 U.S. 40, 50 (1980)).

First, the spousal testimony privilege allows one spouse to refuse to testify adversely against the other in criminal or related proceedings. Breton, 740 F.3d at 10. In other words, so long as the marriage between the spouse and the defendant is valid at the time of testifying, the spouse "may be neither compelled to testify nor foreclosed from testifying" against the person to whom he or she is married. Trammel v. United States, 445 U.S. 40, 53 (1980); United States v. Bad Wound, 203 F.3d 1072, 1075 (8th Cir. 2000). The testimonial privilege, should the witness-spouse assert it, applies to all testimony against a defendant-spouse, including testimony on non-confidential matters and matters which occurred prior to the marriage. United States v. Byrd, 750 F.2d 585, 590 (7th Cir. 1984). Here, assuming the marriage is valid, the privilege rests with Ms.

11

Pacheco, who may waive the privilege without the consent of Mr. Severns.

Second, the marital communications privilege permits a defendant to refuse to testify, and allows a defendant to bar his spouse or former spouse from testifying as to any confidential communications made during their marriage. Breton, 740 F.3d at 10. The privilege may be asserted against the production of evidence when four prerequisites are met: (1) there must have been a communication; (2) there must have been a valid marriage at the time of the communication; (3) the communication must have been made in confidence; and (4) the privilege must not have been waived. S.E.C. v. Lavin, 111 F.3d 921, 925 (D.C. Cir. 1997). The confidentiality of communications made during a valid marriage is presumed. Byrd, 750 F.2d 585, 590 (7th Cir. 1984). In this instance, the marital communication privilege would only apply to the communications occurring after the witness and defendant's valid marriage.   In any event, the government understands through counsel that Ms. Pacheco and the defendant would seek to invoke their respective privileges and the government will not press the issue.

E. Fifth Amendment

The United States has been informed through counsel that the two passengers, if called to testify, would invoke their Fifth Amendment privilege.   The fact that Mr. Forte previously testified at the suppression hearing does not prevent him from raising the privilege now.   See Ottomano v. U.S., 468 F.2d 269 (1st Cir. 1972); U.S. v. Johnson, 488 F.2d 1206 (1st Cir. 1973).

**IV.**    **REQUESTS FOR JURY INSTRUCTIONS**

The government requests that the Court give the following instructions should the defendant testify and he is impeached with his prior convictions, and/or if the government is allowed to use 404(b) evidence.   The instructions are taken from the Pattern Jury Instructions for the District Court of the First Circuit (2015) posted on the Court's website.   Beyond these, the government has no requests other than the Court's usual and customary instructions for cases involving 18 U.S.C. § 922 (g)(1), including "possession" and "stipulations."   The government may call a fingerprint expert and should she testify, a request for instruction is also listed below.

| Number | Description |
|---|---|
| 2.01 | Stipulations |
| 2.03 | Impeachment by Prior Inconsistent Statement |
| 2.05 | Impeachment of Defendant's Testimony by Prior Conviction |
| 2.07 | Weighing the Testimony of an Expert Witness |
| 2.06 | Evidence of Defendant's Prior Similar Acts |
| 2.20 | Testimony by Defendant |
| 4.18.922(g) | Possession of a Firearm or Ammunition in or Affecting Commerce by a Convicted Felon, 18 U.S.C.§ 922(g) |

Respectfully submitted,
UNITED STATES OF AMERICA
By its Attorneys,

PETER F. NERONHA
United States Attorney


/s/ Richard W. Rose
RICHARD W. ROSE
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - Phone
(401)709-5001 - Fax
Richard.Rose@usdoj.gov

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of July 2016, I caused the United States' Trial Memorandum to be filed electronically and is available for viewing and downloading with the ECF system:

<u>/s/ Richard W. Rose</u>

RICHARD W. ROSE
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - Phone
(401)709-5001 - Fax
Richard.Rose@usdoj.gov